## COOK v. FRANAVICH et al.
### No. 16286.

Court of Appeal of Louisiana.   Orleans.
June 22, 1936.

Oliver S. Livaudais, of New Orleans, for appellant.

John R. Perez, of New Orleans, for appellees.

McCALEB, Judge.

Plaintiff alleges that he is the owner of a launch, the Beulah C, which he purchased from one John Ronquillo and Simon Buras, on October 31, 1925, by written bill of sale for the sum of $600; that he had been in peaceful possession of said launch from date of purchase up to July 27, 1934, when the boat, which was moored to the bank of the Mississippi river in front of his home in Plaquemines parish, was unlawfully taken by the defendants Nicole Franavich, Sr. and Jr. He further alleges that, at the time of the unlawful conversion of his property by the defendants, he was away from home, and that his wife notified the defendants not to trespass upon plaintiff's property, but that, notwithstanding, the defendants failed to heed her protest and removed the launch Beulah C from its mooring place, unlawfully converting it to their own use. He further avers that the defendants dismantled and removed the engine from the hull of the launch, and threw it into the river in front of his home, and proceeded to take the hull of said launch down the river to a point in front of the property of one, Fred Zuvich, and that defendants have unlawfully assumed ownership, possession, and control over the boat from the date of the conversion up to the present time. He complains that, because of the foregoing, he has been seriously damaged and prays for relief as follows:

(1) The sum of $2 per day for each day that the launch Beulah C had been retained by the defendants, or in total the sum of $448.

(2) $500, representing the value of the engine of the launch alleged to have been destroyed by the defendants; and

(3) That the defendants be ordered to return to the plaintiff the hull of the launch, now in their possession, and in default thereof that they be compelled to pay an additional sum of $200, representing the value of the same.

The defendants filed exceptions to the petition, which were overruled, and thereafter they answered averring multitudinous defenses, many of which are unnecessary to discuss in determining the case. Their chief defense is that, shortly before they took possession of the boat, they had, in good faith, purchased the same from John Ronquillo for the sum of $25; that they, at all times until the filing of the suit, believed that John Ronquillo was the owner of the boat; that the boat was in truth a derelict which had been swamped in the Mississippi river during a storm occurring in the year 1932; that the engine therein was worthless; that it was located in the Mississippi river in front of the property of one, Charles Hatton, Jr., at Sunrise, La., and not in front of plaintiff's property, and that the plaintiff had abandoned the boat after the storm in 1932. Defendants further aver that according to the assessment rolls of the parish of Plaquemines, the launch was assessed in the name of John Ronquillo and that, at the time that they took possession of and removed it, plaintiff's wife did not protest the removal or against them taking possession of the wreck; that, as aforesaid, the launch was practically worthless; that her cabin has been removed, her stem badly damaged and deteriorated; that they had, by their labor, expended the sum of $300 upon her; and

that, in any event, if the Court should hold that the legal title to the property is in the plaintiff, they are entitled to the value of the labor and material which they expended in rebuilding the craft. The defendants further called the said John Ronquillo in warranty, pleading that the said Ronquillo, having warranted the title of the launch Beulah C, was a necessary party to the suit to the end that in the event the court should hold the defendants, that they are in turn entitled to judgment against their warrantor.

John Ronquillo appeared in propria persona and adopted as his answer to the suit the answer filed by the defendants.

After a trial of the case upon its merits, the district court rendered a judgment in favor of the defendant Nicole Franavich, Sr., decreeing him to be a third possessor in good faith and, as such, entitled, under the provisions of law, to keep the boat Beulah C until such time as he is fully reimbursed by the plaintiff for the complete enhanced value of the boat as a result of the industry and improvements placed thereon, which enhanced value is fixed at the sum of $300, and which amount the plaintiff is condemned to pay to the defendant within thirty days of the date of final judgment, and upon failure so to do the launch Beulah C to become the absolute property of the defendant Nicole Franavich, Sr.

It was further ordered that the plaintiff have the option of electing to have the defendant Nicole Franavich, Sr., return the boat to him on the payment of $300, the amount of the improvements placed thereon by defendants, as aforesaid, and, in the event that plaintiff does not elect to have the launch returned to him, the defendant is ordered to pay to the plaintiff the sum of $25, which amount is fixed by the trial court as the value of the launch Beulah C at the time the same came into defendant's possession.

The court further dismissed plaintiff's suit as against the defendant Nicole Franavich, Jr., and maintained defendants' call in warranty against John Ronquillo. From the judgment in favor of Nicole Franavich, Sr., plaintiff has appealed.

We find the facts of the case to be as follows:

On October 31, 1925, the plaintiff purchased the launch Beulah C from John Ronquillo and Simon Buras for the sum of $600. From the date of the sale up to May 27, 1932, the boat was, at all times, in plaintiff's possession, its usual mooring place being in the Mississippi river in front of the property owned by his father-in-law, Victor Mitchell. In May, 1932, the boat sunk because of a tropical storm. It remained swamped from that time until July 27, 1934. During all that period it was partially submerged, and the plaintiff did not take any steps with a view of salvaging the wreck or using it for any purpose whatsoever.

At this point it is well to remark that the plaintiff testified that after the storm, when he found the boat swamped, he pulled it up to the bank of the river; that it was not clear out of the water, but that one could walk all around it. He further says that the engine, at all times, was in good condition.

This testimony is corroborated by Victor Mitchell, his father-in-law, Loddy Cook, his wife, and Carl and Ben Rogers, his wife's nephews, but all of this evidence is in direct conflict with that of disinterested witnesses produced by the defendants to the effect that the boat remained, at all times, in its sunken condition, and from the date of the storm until July 27, 1934, it was nothing but an abandoned wreck.

Plaintiff and his witnesses also testified that, although the cabin of the boat had been taken off by the storm, he preserved the motor by placing canvas over it, and that the boat was moored to a Willow tree by a large cable. But these statements are likewise in discord with the preponderance of evidence offered by the defendant and voiced upon the stand by disinterested witnesses.

The defendants testify that shortly before July 27, 1934, they contacted John Ronquillo, and offered him the sum of $25 for the sunken Beulah C. This offer was accepted by Ronquillo and thereafter, on July 27, 1934, defendants repaired to a point in the river near the property of plaintiff's father-in-law and abutting that of one Charles Hatton, Jr., and started the work of taking the Beulah C out of the water and river sand which was partially covering it. They dug out the engine of the boat which was worthless and placed it upon the batture and built a small levee around the sunken launch so that they could bail out the water and sand

in order to remove the boat. After three days of labor, they succeeded in placing the hull in position for removal and towed the same with the assistance of a skiff down the river to a point adjacent to the property of Fred Zuvich. Thereafter, for many months, through their industry and labor, the defendants rebuilt the salvaged hull of the Beulah C, completing their work in the month of December, 1934.

During the early part of March, 1935, the defendants received notice from the attorney of the plaintiff, claiming that they had illegally taken plaintiff's boat and demanding damages or the return of the launch.

Plaintiff's witnesses testified that at the time the defendants took possession of the boat that plaintiff's wife vigorously protested against their doing so, claiming that he had never abandoned it; and that, notwithstanding the protests, defendants assumed possession and control of the launch. These statements, however, are denied by the defendants. Although plaintiff introduced in evidence a letter dated July 27, 1934, written by his wife to him, telling him of the alleged unlawful acts of the defendants, still it does not appear that the plaintiff did anything with reference to regaining possession of the boat from the date he received the letter until some time in March, 1935, when he placed his claim in the hands of an attorney. To say the least, his inaction on this score is inconsistent with that of an owner who has been deprived of his property through the unlawful act of a third person.

The testimony of the plaintiff's witnesses does not favorably impress us. It is evident that the district judge did not believe them and was of the opinion that the story told by the defendants and their witnesses was genuine.

We are convinced, however, that the real truth is that the plaintiff had abandoned the launch after it sunk in the 1932 storm, and that he had no idea of reclaiming it at the time the defendants took possession of the hull. Many months afterwards, when he saw the boat in her improved condition, due to the defendants' industry, he changed his mind, and employed a lawyer to prosecute the claim. If the defendants had not resisted the action upon the ground that they were third possessors in good faith, the district judge would have been justified in dismissing the plaintiff's suit in its entirety. Article 3421 of the Revised Civil Code; J. A. Bel Lumber Company v. Stout, 134 La. 987, 64 So. 881.

In view of the defense, the court below found as a fact that the defendants, in good faith, purchased the derelict from Ronquillo. While we entertain some doubt as to the defendants' lack of knowledge that the boat had not been formerly owned by the plaintiff, we are not prepared to say that the trial judge committed manifest error in holding the defendants to be third possessors in good faith.

The trial court based its decree upon articles 525 and 526 of the Revised Civil Code.

Article 525 provides:

"If an artificer, or any person whatever, has employed materials which did not belong to him, in making another article, whether the materials may or may not be brought back to their former shape, the person who was the owner of the materials, has a right to claim the thing which was made out of them, on reimbursing the price of the workmanship."

Article 526 provides:

"The rule established in the preceding article does not apply when the workmanship is so important that it greatly surpasses the value of the materials which have been employed. Industry, then, is considered as the principal part, and gives the workman a right to keep the thing which he has made on condition of reimbursing the price of the materials which were employed."

It is obvious from the judgment below that the judge did not decide the question as to whether or not the labor and industry of the defendants was such that it greatly surpassed the value of the hull of the Beulah C and, he accordingly, gave to the plaintiff the option of regaining ownership of the launch, in its improved state, by paying to the defendants the value of their materials and workmanship, which he fixed at $300 (article 525, R.C.C.) or to receive from the defendants the sum of $25, which he fixed to be the value of the hull of the launch at the time the defendants obtained possession of the same. Article 526, R.C.C.

The result obtained is fair and decrees substantial justice to the litigants.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.